F9hdcapc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                 New York, N.Y.

           v.                             15 Cr. 0607(WHP)

JAMES CAPERS, et al.,

                Defendants.

------------------------------x
                                          September 17, 2015
                                          11:50 a.m.
Before:

              HON. WILLIAM H. PAULEY III,

                                          District Judge


                       APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  SCOTT A. HARTMAN
     JESSICA R. LONERGAN
     JASON M. SWERGOLD
        Assistant United States Attorneys

ANDREW G. PATEL
     Attorney for Defendant James Capers

NATALI J.H. TODD
     Attorney for Defendant Tommy Brown

JOHN ANTHONY DIAZ
     Attorney for Defendant Jessie Irvin

SARAH KUNSTLER
     Attorney for Defendant Marquise Rochester

JEFFREY G. PITTELL
     Attorney for Defendant Edwin Moye
```

F9hdcapc

|   |   |
|---|---|
| 1 | APPEARANCES CONTINUED |
| 2 | XAVIER ROBERT DONALDSON |
|   |     Attorney for Defendant Unique Christopher |
| 3 |   |
|   | DAVID TOUGER |
| 4 |     Incoming Attorney for Defendant Unique Christopher |
| 5 | THOMAS FRANCIS DUNN |
|   |     Attorney for Defendant Dante Rodgers |
| 6 |         - also present - |
| 7 | Kelley Sharkey |
|   |     Attorney to be appointed for Defendant Christian McKnight |

Plain rendering:

```
                    APPEARANCES CONTINUED

XAVIER ROBERT DONALDSON
      Attorney for Defendant Unique Christopher

DAVID TOUGER
      Incoming Attorney for Defendant Unique Christopher

THOMAS FRANCIS DUNN
      Attorney for Defendant Dante Rodgers
          - also present -

Kelley Sharkey
      Attorney to be appointed for Defendant Christian McKnight
```

                                    oOo

          THE COURT:  Good morning.  Please be seated.

          Please bring in the defendants.

          THE CLERK:  Matter on for initial conference before the Court, United States of America against James Capers, et al.

          Will counsel for the government please state their appearances for the record.

          MR. HARTMAN:  Good morning, your Honor.  Scott Hartman with Jessica Lonergan and Jason Swergold for the government.

          THE COURT:  All right.  Good morning.

          MS. LONERGAN:  Good morning, your Honor.

          THE CLERK:  And for the defendants, starting with Mr. Capers.

          MR. PATEL:  Good morning, your Honor.  Andrew Patel for Mr. Capers.  Mr. Capers is seated in the jury box.

F9hdcapc

1              THE COURT:  Where is he seated?
2              MR. PATEL:  Mr. Capers, would you raise your hand?
3              THE COURT:  All right.  I note the presence of
4    Mr. Capers in the jury box.
5              Good morning, Mr. Capers and Mr. Patel.
6              THE CLERK:  Counsel for Mr. Brown.
7              MS. TODD:  Good morning, your Honor.  Natali Todd for
8    Mr. Brown, who is seated in the second row to the Court's
9    right.
10             THE COURT:  All right.  Good morning, Ms. Todd.  I
11   note Mr. Brown's presence.
12             Ms. Todd, we were waiting for you.  In the future, be
13   here.
14             MS. TODD:  Your Honor, if I may?  I was literally
15   stuck between two stations on the train.  I was unable to make
16   any kind of contact.
17             THE COURT:  Leave earlier.
18             THE CLERK:  Counsel for Mr. Irvin.
19             MR. DIAZ:  Good morning, your Honor.  John Diaz,
20   retained for Mr. Jesse Irvin, who is seated in the jury box in
21   the second row in the third seat to the Court's right.
22             THE COURT:  Good morning, counsel.  And I note the
23   presence of Mr. Irvin in the jury box.
24             THE CLERK:  Counsel for Mr. Rochester.
25             MS. KUNSTLER:  Good morning, your Honor.  Sarah

F9hdcapc

1  Kunstler for Mr. Marquise Rochester.  He is seated in the
2  second row in the second seat from the -- well, it is easier
3  from the other side, rather.  In the third row -- he is
4  standing up.
5          THE COURT:  Fine.  I note Mr. Rochester's presence,
6  and good morning, Ms. Kunstler.
7          THE CLERK:  Counsel for Mr. Moye.
8          MR. PITTELL:  Good morning, your Honor.  Jeffrey
9  Pittell appearing for Mr. Moye.  He is seated in the jury box
10 next to Mr. Capers.
11         THE COURT:  Good morning, Mr. Pittell, and I note Mr.
12 Moye's presence.
13         THE CLERK:  Counsel for Mr. Christopher.
14         MR. DONALDSON:  Your Honor, Xavier Donaldson, counsel
15 assigned to Mr. Christopher.
16         MR. TOUGER:  David Touger, here to replace
17 Mr. Donaldson.
18         THE COURT:  All right.  Good morning, gentlemen.
19         And where is Mr. Christopher?
20         MR. TOUGER:  Mr. Christopher is the second row, the
21 last seat from the left.
22         THE COURT:  All right.  Mr. Donaldson, I understand
23 that you need to withdraw from this matter given your
24 representation in other matters in the Bronx?
25         MR. DONALDSON:  Yes.  Related to this case, yes.

1      THE COURT: All right. Very well.
2      Then, Mr. Touger, you are the CJA attorney on duty
3 today who I asked to be here, and I understand from the U.S.
4 Attorney's Office there are no potential conflicts. So,
5 accordingly, I'm appointing you in Mr. Donaldson's place
6 instead as counsel for Mr. Christopher.
7      And I trust, Mr. Donaldson, that you will cooperate in
8 every way with Mr. Touger --
9      MR. DONALDSON: I already have.
10     THE COURT: Very well. Thank you very much for your
11 service to the court, Mr. Donaldson. You are excused.
12     MR. DONALDSON: Thank you.
13     THE COURT: Mr. Touger, why don't you come up and take
14 a seat at counsel table.
15     THE CLERK: And counsel for Mr. Rodgers.
16     MR. DUNN: Good morning, your Honor. Thomas Dunn for
17 Mr. Rodgers, and Mr. Rodgers is seated next to me.
18     THE COURT: All right. Good afternoon -- or good
19 morning to you, Mr. Dunn. I note Mr. Rodgers' presence.
20     And, finally, just for the record, I note the presence
21 of Kelley Sharkey in the well of the courtroom. I understand
22 that the defendant, Mr. McKnight, has not yet been writted in
23 here and, accordingly, you haven't yet been appointed, but it
24 is anticipated that you will be appointed when he is arraigned.
25 So I thank you as a courtesy to the Court for being here this

F9hdcapc

1   morning

2               MS. SHARKEY:  Thank you, Judge.

3               THE COURT:  Now, Mr. Hartman, this is an initial
4   conference.  Briefly, what are the nature of the charges that
5   the government has lodged against the defendants and what
6   discovery does the government have to provide to their counsel?

7               MR. HARTMAN:  Your Honor, this is primarily a
8   racketeering case.  The defendants are charged with being
9   members of what the government has termed in the Indictment the
10  Leland Avenue Crew -- it is named after a street in the Bronx,
11  Leland Avenue -- where the organization, the enterprise
12  primarily operated.  It was a street gang that these members or
13  these defendants participated in.

14              In connection with their participation in this street
15  gang, they engaged in a variety of violent acts -- shootings
16  and assaults and such -- as well as narcotics trafficking,
17  specifically crack cocaine trafficking.  And they were engaged
18  in an ongoing dispute with a rival street gang based on Taylor
19  Avenue, which is another street in the Bronx that was a couple
20  of streets over.  And we've charged -- I just want to note for
21  the record so the Court is aware, and I think the Court may
22  already been aware, we charged 11 members of the Taylor Avenue
23  crew in a companion case that is currently before Judge Failla
24  with racketeering charges as well.

25              In addition to the racketeering conspiracy, which is

1  Count One of the Indictment, we've also charged all of the
2  defendants in a crack cocaine conspiracy, which is Count Three
3  of the Indictment, and we've charged six of the eight
4  defendants with using and carrying firearms in connection with
5  the racketeering conspiracy.
6        We've also charged Mr. Capers with the July 7th, 2015
7  murder of a rival gang member from Taylor Avenue, and in
8  connection with that we've charged him in Count Two with a
9  racketeering murder.  We've also charged him with a drug murder
10 in Count Four and a 924(j) in Count Five.
11       With respect to the discovery, we expect there to be
12 substantial discovery in this case, Judge.  There have been a
13 number of controlled purchases of crack cocaine from the
14 defendants in this case.  So in connection with that, we expect
15 there to be audio and video recordings and other documents
16 relating to those controlled purchases.
17       We've also executed search warrants on the Facebook
18 pages of a number of these defendants.  Those productions tend
19 to be very large because we tend to get a lot of data from
20 those.  And so that discovery will all be produced.  It is our
21 intention at this time to produce the discovery, those Facebook
22 pages, to all of the defendants, not on a defendant-specific
23 basis.
24       We've also searched a number of cell phones that were
25 seized by the NYPD in connection with the state offense arrests

1     for some of these defendants, and so we will be producing those
2     as a result of those searches as well.
3              There are numerous jail calls -- thousands of jail
4     calls, actually -- involving these defendants that were
5     recorded primarily at Rikers island when they were detained in
6     connection with various state offenses that are in some cases
7     relevant to this case and in some cases not.
8              There are also property vouchers related to seizures
9     of firearms and controlled substances that were made by the New
10    York City Police Department in connection with some of these
11    state offense arrests.
12             There are YouTube videos in which the defendants hold
13    themselves out as members of the Leland Avenue Crew where they
14    sometimes refer to them as the Paper Gang or Paper Avenue Gang.
15             There are also reports -- crime scene reports and
16    photographs related to certain acts of violence that were
17    investigated by the NYPD, not just the murder on July the
18    7th but also other shootings and such, which we would prove up
19    as overt acts in furtherance of the racketeering conspiracy at
20    the trial in this case.  So we will be producing those
21    materials as well.
22             There are also videos -- surveillance videos in
23    connection with some of those shootings that were obtained from
24    businesses in the area that captured relevant facts.
25             So that's the universe of discovery that we expect to

1    produce in the case.  There may be some other things as well.

2            THE COURT:  Are there any statements by any of the

3    defendants in custody?

4            MR. HARTMAN:  In some cases there were statements that

5    were made, so we do intend to produce those on an individual

6    basis.  So apart from what I've just outlined, which is all

7    group discovery and we intend to produce for the most part to

8    all of the defendants, we will be producing to each individual

9    defendant on an individual basis his prior criminal history

10   record, his rap sheet.  We'll also be producing NYPD arrest

11   reports for certain of the arrests that each defendant has been

12   the subject of in the past, because we will in some cases be

13   attempting at trial to prove up the facts underlying those

14   arrests as conduct in furtherance of the racketeering

15   enterprise.  So we are producing those arrest reports to give

16   defense counsel notice of some of the facts that we would

17   intend to prove up.

18           And then we will also -- to the extent that

19   post-arrest statements were made, we will produce that

20   information to defense counsel as well.  My understanding is

21   anyone who made a post-arrest statement, it was videotaped, so

22   we will be producing that video file as well.

23           With respect to the group discovery, Judge, we have

24   been in communication with Mr. Patel about the best way to get

25   that out to the defendants.  We are going to continue to have

1    discussions about how to do that.  We do anticipate that within
2    the next 30 to 45 days we can substantially complete discovery
3    in this case.  And we may come back to the Court if it appears
4    appropriate to appoint a discovery coordinator, but if there is
5    another more efficient way to get the discovery out, we'll talk
6    to Mr. Patel about what that would be and go with the route
7    that will ensure that the defendants have the evidence and the
8    discovery as soon as possible.
9             THE COURT:  Is the government going to produce all of
10   the discovery in electronic format?
11            MR. HARTMAN:  We do intend to, Judge, and given the
12   quantity of the discovery, we expect it will be on a hard
13   drive.  So it is possible that we would just solicit hard
14   drives from all of the defendants and produce it that way.
15   Given that we do produce on a rolling basis because there is a
16   lot of material, it might be more efficient to have, you know,
17   one member of the defense team receive all the CDs and then
18   others will copy them.  We will talk to Mr. Patel about the
19   best way to get the discovery out.
20            THE COURT:  What about getting that electronic
21   discovery to the defendants who are in custody?
22            MR. HARTMAN:  My understanding, Judge, is that the
23   majority of the defendants are in BOP facilities.  They are at
24   the MDC, I think, for the most part.  There is one defendant at
25   the MCC.  And we'll talk to the marshals about whether or not

1     that is going to remain that way.
2            Because of the fact that we've charged this rival
3     gang, my understanding is that the marshals intended to detain
4     the defendants in this case at the MDC and the defendants in
5     the other case at the MCC.  So I think that the defendant
6     detained in the MCC in this case may ultimately be moved to the
7     MDC, but we'll talk to the marshals about that.
8            My understanding is that the MDC will receive discs
9     from defense counsel.  Each defendant, I think, is allowed to
10    have up to 200 discs in his cell.  But if we put the material
11    on a hard drive, the government will provide that to the MDC
12    and the MDC will make it available to all the defendants who
13    are charged in the case.
14            THE COURT:  All right.  Thank you, Mr. Hartman.
15            Mr. Patel.
16            MR. PATEL:  Your Honor, I just want to raise one
17    question.  Surveillance videos, including -- I can't believe
18    that I am about to say this, but post-arrest interviews in the
19    Bronx are all on proprietary software.  So unless the
20    government converts it to something more universal, none of us
21    are going to be able to see that.
22            THE COURT:  What about that, Mr. Hartman?
23            MR. HARTMAN:  Judge, if I could address that?
24            Generally what we do is we provide the software that's
25    required to view the videos.  That said, the technology

1    particularly at the MDC and the MCC tends to be either
2    antiquated or secure in a way that you can't run these
3    programs.  So what we intend to do is to have our in-house tech
4    people, to the extent that they can, convert the videos to a
5    playable format.  And when we put it on a hard drive, we will
6    do it in a format that should be playable.  Sometimes it is an
7    iterative process.  We have to hear back from defense counsel
8    about certain files that there are problems with, and we work
9    with them to get that done.
10            Judge, the other thing I did want to address is with
11   respect to Mr. Capers, the capital case process, because I
12   omitted to discuss that with the Court.  This case has not yet
13   been declared by the Attorney General with respect to the
14   government's decision about whether or not to seek the death
15   penalty.  We do anticipate that this is a case in which we can
16   make that decision without the need for mitigation discovery
17   from the defense.  And so what we intend to do is put together
18   a submission that will be sent to DC within the next couple of
19   weeks.
20            Generally that decision, it varies a lot, Judge, in
21   terms of how much time it takes to get the decision back from
22   them.  But I know recently I had a case where the committee
23   passed on the decision within 60 days.
24            So I think what Mr. Patel is -- based on my
25   conversations with defense counsel, we expect that they are

1    going to be asking the Court to come back in about three
2    months.  I think it is likely we will have a decision on the
3    capital case issue at that time.
4             THE COURT:  Does the government believe that they can
5    complete then the production of all of this material on a
6    rolling basis within 45 days?
7             MR. HARTMAN:  That's our hope, Judge.  We do believe
8    it is possible and we are going to be working diligently to get
9    that done.  If for some reason we encounter a major obstacle in
10   that regard, we'll certainly talk with defense counsel and if
11   we need to we'll come back to the Court.
12            THE COURT:  All right.  It sounds like one of those
13   obstacles might be dealing with converting this proprietary
14   software into something that's viewable by defense counsel and
15   the defendants.  And because I generally like to see any
16   statements by a defendant in custody provided swiftly to all
17   defense counsel, I'm going to urge the government to start with
18   that.  It will serve two purposes.  It will comply with my view
19   that defense counsel need to know what their clients have said,
20   and we'll uncover any flaws in the conversion process early on
21   rather than at the end of the day.
22            Does that make sense to you?
23            MR. HARTMAN:  Judge, that makes total sense and we
24   will prioritize those statements.
25            THE COURT:  All right.  Thank you.

1              Mr. Patel.

2              MR. PATEL:  Your Honor, thank you.  Mr. Hartman and I

3     have been this road before, and, ironically, the only

4     proprietary system that we haven't quite figured out yet is the

5     one used by the Bronx Homicide Unit.  I have no idea why they

6     would pay money for something that they could get for free, but

7     there we have it.  So that's been a little bit of a stumbling

8     block in the past.  Hopefully, we can get through that.

9              But, your Honor, Mr. Hartman correctly anticipated our

10    request was to come back in approximately three months.  That

11    should give us time to start to get our arms around this.  I

12    must tell you, I would be very surprised if we had an answer

13    from the Attorney General by then but I would be delighted.

14             THE COURT:  All right.  Does any other defense counsel

15    wish to take a view separate from that that's been expressed by

16    Mr. Patel?

17             (Pause)

18             Then I'm going to require the government to complete

19    the production of discovery on a rolling basis, let's say, by

20    October 30th.  And then looking down from there, I will put

21    this matter on for a further conference on December 18th at

22    2 o'clock with a view at that time that defense counsel may be

23    in a position to inform the Court as to what motions, if any,

24    they may wish to make prior to trial.  And assuming, perhaps

25    optimistically, that the Attorney General will have made a

F9hdcapc

1   decision in this case, I'll be fixing a trial date on
2   December 18th.
3              Is that a schedule that is acceptable?
4              MR. HARTMAN:  That is fine for the government, Judge.
5              MR. PATEL:  Thank you, your Honor.  That is fine.
6              THE COURT:  What are the defendants' respective views,
7   then, regarding the exclusion of time between now and
8   December 18, 2015?
9              MR. PATEL:  On behalf of Mr. Capers, your Honor, I
10  consent to the exclusion of time.
11             MS. TODD:  On behalf of Mr. Brown, I consent to the
12  exclusion of time.
13             MR. DIAZ:  On behalf of Jessie Irvin, we consent to
14  the exclusion of time, your Honor.
15             MS. KUNSTLER:  On behalf of Mr. Rochester, we consent.
16             MR. PITTELL:  On behalf of Mr.Moye, we would consent,
17  Judge.
18             MR. TOUGER:  As to Mr. Christopher, we consent.
19             MR. DUNN:  Your Honor, I consent on behalf of
20  Mr. Rodgers.
21             THE COURT:  All right.  Since this continuance is due
22  to the government's need to provide voluminous discovery to the
23  defendants and the defendants' need to review that discovery in
24  order to determine what motions, if any, to make, I
25  prospectively exclude the time from today until December 18,

F9hdcapc

1    2015 from Speedy Trial Act calculations.  I find that this
2    continuance serves to ensure the effective assistance of
3    counsel and prevents any miscarriage of justice.  Additionally,
4    I find that the ends of justice served by such a continuance
5    outweigh the best interests of the public and each of the
6    defendants in a speedy trial pursuant to 18 U.S.C. Section
7    3161.
8              So I'm setting this matter down at 2:30 on
9    December 18th.
10             Are there any other issues that counsel wish to raise?
11             MR. HARTMAN:  Judge, I just wanted to clarify the time
12   for the next conference.
13             THE COURT:  2:30.
14             MR. HARTMAN:  2:30?
15             THE COURT:  Yeah.  I think I said 2 o'clock earlier
16   and I misspoke.
17             MR. HARTMAN:  Thank you, Judge.
18             MR. TOUGER:  Your Honor, I would just like the Court's
19   permission to order the minutes from Mr. Christopher's
20   arraignment down in the Magistrate's, the presentation.
21             THE COURT:  Your application is granted.  Just submit
22   something, Mr. Touger.
23             All right.  Everyone in the courtroom is to remain
24   seated until the defendants are escorted from the courtroom,
25   and the marshals may escort them now.

F9hdcapc

1            (Pause)

2            (Defendants not present)

3            THE COURT:  Have a good afternoon.

4            THE CLERK:  All rise.

5            MR. SWERGOLD:  Thank you, your Honor.

6

7                           - - -