UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
UNITED STATES OF AMERICA,      :

     -against-               :             MEMORANDUN OF LAW
                                 :
                                        15 Cr. 607 (WHP)
JAMES CAPERS,               :
                Defendant,     :
------------------------------------------------------x

## PRELIMINARY STATEMENT

Defendant James Capers respectfully submits this memorandum of law in support of his motion to suppress identification evidence and for an Order permitting Mr. Capers to join the motions filed on behalf of his co-defendants. The pretrial identification of Mr. Capers should be suppressed as unduly suggestive and unreliable.

## FACTUAL BACKGROUND

Mr. Capers is charged in six Counts of a six Count indictment that alleges that Mr. Capers was a member of a racketeering enterprise (Count One), a member of a narcotics conspiracy (Count Two), that on or about July 7, 2015, he participated in the murder of Allen McQueen (Counts Three and Four) and that Mr. Capers used and carried weapons in relation to crimes charged in the indictment (Count Five and Six).

The Government alleges that Mr. McQueen was shot and killed on July 7, 2015, in the Bronx, New York. Mr. Capers was arrested on July 15, 2015 at 3:45pm inside the 43rd precinct which is located the Bronx.

According to the discovery provided by the Government pursuant to Rule 16 of the Federal Rules of Criminal Procedure, Mr. Capers was placed in two lineups on July 15, 2015, the day he was arrested. Mr. Capers was not identified in either lineup. One of the people who

viewed the lineup, identified someone other than Mr. Capers as a participant in the crime.  The other witness that viewed a lineup that same day, failed to make any identification.

On July 16, 2015, a photograph of Mr. Capers was taken at the 43rd Precinct. On March 7, 2016, approximately 8 months later, that photograph was used in a photo array labeled NYPD Photo Array 340855 (Photo Array) attached as Exhibit A to the Onaodowan Affirmation.   On March 7, 2016, Mr. Capers was identified by an individual who had viewed a six photo array in connection with the investigation of the Allen McQueen murder.

## ARGUMENT

### I.      THE PRETRIAL IDENTIFICATION OF MR. CAPERS SHOULD BE SUPPRESSED BECAUSE THE PHOTO ARRAY WAS UNDULY SUGGESTIVE

Due Process requires that identification testimony that is the product of unnecessarily suggestive law enforcement procedures must be suppressed.  *See Manson v. Brathwaite*, 42 U.S. 98, 114 (1997).  "When the defendant objects to identification testimony to be given by a witness who has identified him prior to trial, a sequential inquiry is required in order to determine whether either the prior identification or an in-court identification of the defendant at trial is admissible. The Court must first determine whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator." *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001); *United States v. Perez*, 248 F. Supp. 2d 111, 113 (D. Conn. 2003), *See also United States v. Tortora,* 30 F.3d 334, 338 (2d Cir.1994).

Mr. Capers is objecting to the identification testimony that will be offered by the witness who identified him in the photo array on March 7, 2016.  The Second Circuit in *Raheem v. Kelly* has established that where such an objection is made by the defendant, an inquiry is required. Defendant is respectfully requesting the opportunity to perform such an inquiry via an

identification suppression hearing in order to determine the admissibility of the pretrial photo array identification.  "The ultimate question of the constitutionality of pretrial identification procedures is a mixed question of fact and law… *Sumner v. Mata,* 455 U.S. at 597, 102 S.Ct. at 1306."*Jarrett v. Headley*, 802 F.2d 34, 42 (2d Cir. 1986).  In order to make a finding of fact and law as to the constitutionality of the pretrial identification procedure of Mr. Capers, we would ask that this Court grant an evidentiary hearing.  *United States v. Wade*, 388 U.S. 218 (1967).

"The fairness of a photographic array depends on a number of factors, including the size of the array, the manner of presentation by the officers, and the array's contents. If there is nothing inherently prejudicial about the presentation, such as use of a very small number of photographs or of suggestive comments, the "principal question is whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to 'suggest to an identifying witness that [that person] was more likely to be the culprit.' " *Jarrett v. Headley,* 802 F.2d at 41 (quoting *United States v. Archibald,* 734 F.2d 938, 940 (2d Cir.1984))." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990)

In the instant case Mr. Capers is number 5 out of only a six image Photo Array.  Mr. Capers' photograph is one of six color images on one sheet of paper that was presented to the witness in the March 7, 2016.  The use of only six photographs in a photo array is a very small number of photographs.  The presentation of this very small number of photographs on one sheet of paper is inherently prejudicial.

In addition to assessing such factors as the size of the photographic array, the Court must also consider the manner of presentation by the officers, including possibly suggestive comments.  *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990)   In this case

the Government has produced no information concerning the manner the photo array was conducted or presented by the officers.

The Photo Array Viewing Report, (attached as Exhibit B to the Onaodowan Affirmation) there are a few sections where the officer must write down the verbal exchange between the witness and the administrating officer should the witness give a "vague answer". The written verbal exchange between the witness and the administrating officer during the photo array procedure on March 7, 2016 was redacted from the Photo Array Viewing Report. This Court can not properly find if any of the comments made during the photo array were suggestive absent an evidentiary hearing.

"A photographic array used to identify a criminal suspect is suggestive if "the picture of the accused, matching descriptions given by the witness, so stood out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit." *United States v. McGee*, No. 99-CR-150E, 2000 WL 1520957, at *2 (W.D.N.Y. Oct. 10, 2000). While we do not know nor do we have any prior descriptions by witnesses of the Photo Array is still unduly suggestive because Mr. Capers' photograph so stood out from all the other photographs as to suggest to the identifying witness that he was the culprit. In the Photo Array, every other suspect's photograph was taken in March 2016, as indicated on the Photo Array Information Report. Mr. Capers' photo was taken in July 2015 as indicated on the Photo Array Information Report. In the photos, every other suspect is dressed for cold weather while Mr. Capers is obviously dressed for warmer weather. Suspects 1 through 4 are all wearing hooded sweatshirts. Suspect 6 is wearing an obvious long sleeved thermal styled shirt with a visible undershirt. Mr. Capers, however, is the only suspect dressed in what is obviously a V neck t-

shirt.  If any previous description was given by a witness, we do not know whether the description given described the suspect as wearing a black V-neck T-shirt.

In *Hylton v. Ercole*, No. 05-CV-4077 (NGG), 2010 WL 2594744, at *11 (E.D.N.Y. June 23, 2010) , the Court states "At the first step of the due process analysis, the Appellate Division correctly found that Hylton's lineup was unduly suggestive under clearly established federal law." *Hylton v. Ercole*, No. 05-CV-4077 (NGG), 2010 WL 2594744, at *11 (E.D.N.Y. June 23, 2010) "And, according to the Appellate Division, Hylton was the only lineup participant who wore beige." *Hylton v. Ercole*, No. 05-CV-4077 (NGG), 2010 WL 2594744, at *11 (E.D.N.Y. June 23, 2010) While *Hylton v. Ercole* discussed the unduly suggestiveness of Mr. Hylton's attire in the lineup procedure, the reasoning used by the *Hylton* Court to reach that conclusion can also be applied to Mr. Capers' photo array procedure.   Just as in the *Hylton* case, Mr. Capers was the only person in the Photo Array that was dressed differently, specifically dressed for warmer weather in a V neck t-shirt.  The alleged crime took place in the middle of the summer. Mr. Capers photograph stood out from all the other photographs as to suggest to the identifying witness that he was the culprit.

"In *United States v. Fernandez,* 456 F.2d 638, 641–42 (2d Cir.1972), in which surveillance photographs showed a robber to be a light-skinned individual with an Afro haircut, we held that the use of a six-photo array where only one of the six even "remotely resemble[d]" that description was impermissibly suggestive. But we noted that if that array had been combined with another five-photo array that included one other light-skinned Black man with an Afro, the resulting 11–photo array with two persons matching the robber's characteristics would not have been impermissibly suggestive." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990).  In the Photo Array, Mr. Capers has the darkest complexion out of the six photographed

suspects.  Just as in the Maldonado-Rivera case, Mr. Capers' photograph was amongst a six person photo array and his skin tone stood out amongst the other five suspects.   The other five suspects had brown skin while Mr. Capers had very dark skin.  Accordingly, the Photo Array used to identify Mr. Capers was impermissibly suggestive.


II.      **THE PRETRIAL IDENTIFICATION OF MR. CAPERS SHOULD BE SUPPRESSED BECAUSE IT WAS UNRELIABLE GIVEN THE SUGGESTIVENESS OF THE PRESENTATION**

When assessing reliability, the Court has to consider a variety of factors, including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  *United States v. Thai*, 29 F.3d 785, 808 (2nd Cir. 1994) (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).  The Second Circuit in *Thai* instructs that these factors must also be evaluated in light of the totality of the circumstances.

As previously discussed, the Government has not supplied us with any information as to the comments that were made during the photo array.  The Government has also failed to supply us with whatever descriptions they received from witnesses.  The murder of Allen McQueen took place on July 7, 2015.  This photo array identification took place on March 7, 2016.  The length of time between the crime and the identification procedure is eight months.  In the Photo Array Viewing Report, it indicates that there are words and gestures made by the witness during the identification procedure, however the record of those words and gestures were redacted upon discovery production.  The Photo Array Viewing Report, indicates that a vague answer was

given by the identifying witness, prompting the administrating officer to then make a comment, but the record of the vague answer and the officer's response were also redacted.

The Government also provided a Wanted Poster featuring Mr. Capers wearing what appears to be the exact shirt as he is wearing in the Photo Array photograph.  The photograph in the Wanted Poster appears to be an enlarged copy of the same photograph of Mr. Capers that was used in the Photo Array.  While it is unclear as to when the Wanted Poster was created or where it was disseminated, it does provide Mr. Capers' name, age, and physical description.

The date and breath of the dissemination of the Wanted Poster is another potential source of taint of the witness's identification of Mr. Capers.  There is no way to determine just by looking at the Wanted Poster how many people have seen it.  A hearing is necessary for the Court to properly examine the totality of these circumstances surrounding the photo array procedure before making a determination as to the reliability of the identification.

It is respectfully submitted that the Photo Array is intrinsically suggestive, that the conduct of the viewing of the photo array must be shown to comport with the requirements of Due Process and that the dissemination of a Wanted Poster is a source of potential taint of the identification of Mr. Capers.  We respectfully submit that a hearing is necessary to examine the fairness of the array, the suggestiveness of the presentation, and the reliability of the identification.

## Join Motions Filed by Co-defendants

Mr. Capers respectfully requests that he be permitted to join the motions filed by all co-defendants that are not inconsistent with the relief sought herein.  This request is made to preserve judicial resources and to avoid unnecessary duplication of efforts.

## **Conclusion**

For the foregoing reasons, the defendant respectfully requests this Court to enter an Order granting the relief sought herein.  Specifically, it is respectfully requested that a pre-trial hearing be ordered on this issue and granting such other and further relief as this Court may deem to be just and reasonable.

Dated:    New York, New York
          July 6, 2017

                                  Respectfully submitted,

                                    /s/Esere Onaodowan
                                  Esere Onaodowan
                                  Counsel for James Capers
                                  116 West 23rd Street
                                  New York, NY 10011
                                  718-427-3139
                                  eonaodowan@eocdlaw.com