UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
UNITED STATES OF AMERICA,                                          :
                                                                   :
                                      Plaintiffs,                  :
                                                                   :                    15 Cr. 607 (JPC)
                         -v-                                       :
                                                                   :               OPINION AND ORDER
                                                                   :
JAMES CAPERS,                                                      :
                                                                   :
                                      Defendant.                   :
                                                                   :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

Defendant James Capers, a federal inmate serving a 504-month term of imprisonment, moves *pro se* for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A). Dkt. 359 ("Motion"). That sentence, which was imposed at a resentencing hearing on January 12, 2023, followed Capers's conviction at trial for offenses relating to his membership in a violent Bronx-based gang, with Capers's personal conduct consisting of the shooting and killing of a rival gang member. As justification for early release, Capers maintains that the criminal activity of the man he killed—who himself was involved in the murder of Capers's close friend and his gang's leader—mitigates Capers's conduct. In opposition, the Government argues that this Court lacks jurisdiction to consider the Motion, that Capers failed to exhaust his administrative remedies, and that the Motion should be denied on its merits. Dkt. 367 ("Opposition"). For the reasons that follow, the Court agrees that it lacks jurisdiction to modify Capers's sentence as his appeal is pending. Further, upon considering the merits of the Motion as permitted under Federal Rule of Criminal Procedure 37(a), the Court concludes that Capers has failed to show "extraordinary and compelling reasons" for purposes of 18 U.S.C. § 3582(c)(1)(A)(i) and that several factors under

18 U.S.C. § 3553(a) weigh strongly against releasing him early from prison.  The Court therefore dismisses Capers's Motion for lack of jurisdiction, and states that it would deny the Motion were jurisdiction to exist.

## I.  Background

### A.  Offense Conduct[1]

Capers's conviction arose from his involvement with a violent criminal gang known as the Leland Avenue Crew.  The Leland Avenue Crew distributed illegal narcotics on the streets of the Bronx, with its members committing violent acts to include shootings, assaults, and murders, largely to protect its drug trade.  Dkt. 332 ("PSR") ¶¶ 25-27.  The Leland Avenue Crew had a violent and deadly rivalry with another nearby gang, the Taylor Avenue Crew.  *Id.* ¶¶ 25, 31-32.

Capers joined the Leland Avenue Crew in 2009 as a teenager, eventually assuming the role of the "right-hand man" of Pablo Beard, the leader of the Crew.  *Id.* ¶¶ 28-29.  As a member of the Leland Avenue Crew, Capers distributed crack cocaine in the territory controlled by the gang.  *Id.* ¶¶ 27-28.  In 2009, Capers disrupted an attempt by an undercover police officer to buy crack in that territory, ordering the officer to leave the block "before you get hurt."  *Id.* ¶ 28.  Capers's actions with the Leland Avenue Crew extended beyond drug trafficking.  Capers and other Leland Avenue Crew members committed multiple robberies, which both enhanced the gang's violent reputation and enriched gang members.  *Id.* ¶ 35.

While the Leland Avenue Crew and the Taylor Avenue Crew exchanged gunfire dating back to at least 2007, their rivalry intensified around 2011 when a Taylor Avenue Crew member

---

[1] The following summary of Capers's offense conduct is based on the evidence presented at his trial before the Honorable William H. Pauley III, which culminated in guilty verdicts on three counts on December 7, 2016.  *See* Dkts. 151, 153, 157, 161, 163, 165, 167, 169, 171 (trial transcript).

robbed at gunpoint a Leland Avenue Crew member.  *Id.* ¶ 31.  Multiple shootings followed, including the retaliatory murder of Beard on March 3, 2015.  *Id.* ¶ 32.  A Taylor Avenue Crew member named Elijah Davila shot and killed Beard, with another Taylor Avenue Crew member, Allen McQueen, also involved in the shooting.  *Id.*  The Leland Avenue Crew then retaliated for their leader's death with Capers's killing of McQueen on July 7, 2015.  *Id.* ¶¶ 33-34.

On that day, Capers had one of his drug customers drive him down Taylor Avenue, purportedly to obtain additional narcotics.  *Id.* ¶ 34.  They drove up and down Taylor Avenue multiple times, repeatedly passing McQueen as he carried his one-year-old daughter.  *Id.*  On the third pass, Capers exited the vehicle, drew his gun, and chased McQueen north on Taylor Avenue, as McQueen ran still with his young daughter in his arms.  *Id.*  Capers fired at McQueen several times, with one of the bullets piercing McQueen's side and hitting his lung and a large vein.  *Id.*  McQueen ran for several more yards until he collapsed holding his daughter.  *Id.*  McQueen died at the scene and his daughter suffered a bump to her head.  *Id.*

## B.    Procedural History

Capers was arrested on September 9, 2015 pursuant to an arrest warrant issued based on an indictment that charged him and others with various offenses relating to their involvement with the Leland Avenue Crew.  *See* Minute Entry dated Sept. 9, 2015; Dkt. 1.  On October 24, 2016, a superseding indictment charged Capers and co-Defendant Dante Rodgers, with six counts that included racketeering, drug trafficking, murder, and firearms offenses.  Dkt. 100.  On December 7, 2016, following a jury trial before Judge Pauley, Capers was found guilty of a racketeering conspiracy that involved McQueen's murder and a conspiracy to distribute 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of 18 U.S.C. § 1962(d); a conspiracy to distribute 280 grams and more of mixtures and substances

containing a detectable amount of cocaine base and to distribute mixtures and substances containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(D); and using and carrying a firearm in relation to the racketeering and drug trafficking conspiracies, and possessing a firearm in furtherance of such crimes, causing McQueen's death, in violation of 18 U.S.C. § 924(j).  Dkt. 146; *see* PSR ¶¶ 2, 4, 6, 10.

On June 2, 2017, Judge Pauley sentenced Capers to 444 months of imprisonment on Counts One and Three, to run concurrently, and sixty months of imprisonment on Count Five, to run consecutively, to be followed by a five-year term of supervised release on Counts One and Five and a ten-year term of supervised release on Count Three, all to be served concurrently.  Dkt. 234 ("Original Sentencing Tr.") at 27:25-28:6.  In addition, Judge Pauley imposed restitution in the amount of $9,287.75 to reimburse McQueen's family for funeral expenses.  *Id.* at 29:3-11.

Capers appealed his conviction on June 9, 2017.  Dkt. 229.  While Capers's appeal was pending before the Second Circuit, the case was reassigned to the undersigned.  On December 14, 2021, the Second Circuit vacated Capers's conviction on Count Five, the violation of 18 U.S.C. § 924(j), based on the intervening Supreme Court decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).  *See United States v. Capers*, 20 F.4th 105 (2d Cir. 2021).  This Court then held Capers's resentencing hearing on January 12, 2023.  Dkt. 348 ("Resentencing Tr.").  At resentencing, the Court sentenced Capers to 504 months' imprisonment on each of Count One and Count Three, to be served concurrently, to be followed by a five-year term of supervised release on Count One and a ten-year term of supervised release on Count Three, also to run concurrently.  *Id.* at 62:24-63:4.  The Court further imposed restitution in the amount of $9,287.75 to reimburse

McQueen's family for funeral expenses. *Id.* at 65:19-21.[2]  Capers filed a notice of appeal of his resentencing on January 20, 2023.  Dkt. 345.  That appeal is pending before the Second Circuit.

On July 5, 2023, Capers moved for compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A).  Motion at 1.  On August 21, 2023, the Government filed its Opposition.[3]  The Government opposes compassionate release on multiple alternative grounds: (1) jurisdiction is lacking because Capers's appeal of his resentencing is pending in the Second Circuit; (2) Capers has failed to exhaust his administrative remedies; and (3) on the merits, Capers has not identified "extraordinary and compelling circumstances" for his release and the relevant factors under 18 U.S.C. § 3553(a) do not support a reduction of his sentence.  Opposition at 3-5.  Capers filed a reply in support of his Motion on August 23, 2023.  Dkt. 368 ("Reply").

## II.  Jurisdiction

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982).  This rule "applies in criminal cases."  *United States v. Ransom*, 866 F.2d 574, 575 (2d Cir. 1989).  While "the rule does not preclude a district court, after notice of appeal has been filed, from correcting clerical errors under Fed. R. Crim. P. 36 or from acting to aid the appeal," it is not "relaxed . . . to the point of permitting substantive modifications of judgments."  *Id.* (internal quotations omitted).  While Capers's appeal of the Court's judgment on resentencing remains

---

[2]  The Court subsequently reduced restitution to $577, on agreement of the parties, to account for $5,000 that McQueen's family received from a New York State fund for crime victims and $3,710 raised through a GoFundMe page.  Dkt. 354; *see also* Dkt. 346.

[3]  On August 14, 2023, one week before the Government filed its Opposition, Capers requested a ruling in his favor in light of the Government's failure to oppose his request for compassionate release by that date.  Dkt. 366.

pending, this Court lacks jurisdiction to substantively modify his sentence. The Motion is therefore dismissed for lack of jurisdiction.

Although the Court currently lacks jurisdiction to grant the relief Capers's seeks, the Court nonetheless may consider the merits of his Motion. "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). The Advisory Committee Notes for Rule 37 identify "motions under 18 U.S.C. § 3582(c)" as among those that "the Committee anticipates that Criminal Rule 37 will be used primarily if not exclusively for." Fed. R. Crim. P. 37 advisory committee note to 2012 adoption. Thus, pursuant to Rule 37(a) and in the interest of judicial economy, the Court turns to the merits of Capers's Motion. For reasons that follow, the Court would deny the Motion on its merits were jurisdiction to exist following conclusion of the pending appeal.

### III.   Legal Standard for Compassionate Release

A defendant may seek compassionate release from prison under 18 U.S.C. § 3582(c)(1)(A). *See also United States v. Newton*, No. 18 Cr. 373 (RJS), 2021 WL 321847, at *2 (S.D.N.Y. Feb. 1, 2021) ("The Court may not modify a term of imprisonment once it has been imposed except pursuant to statute." (internal quotation marks omitted)). The statute provides, in relevant part, that upon motion of a defendant, the court "may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Thus, district courts face two questions in addressing the merits of such motions: (1) whether extraordinary and compelling reasons merit reducing the sentence and (2)

6

how the section 3553(a) factors weigh.  *United States v. Bennett*, No. 15 Cr. 95 (JPC), 2022 WL

3445349, at *2 (S.D.N.Y. Aug. 17, 2022).  In doing so, the Sentencing Commission's policy

statement at section 1B1.13 of the Guidelines Manual no longer limits district courts.  *United States*

*v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).  Instead, courts may "consider the full slate of

extraordinary and compelling reasons that an imprisoned person might bring before them in

motions for compassionate release."  *Id.*

      As the moving party, Capers bears the burden of establishing his entitlement to early

release.  *See, e.g.*, *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant

seeks decreased punishment, he or she has the burden of showing that the circumstances warrant

that decrease."); *United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021).  But even

if a defendant demonstrates that "extraordinary and compelling reasons" for compassionate release

exist, "[a] court is not required to reduce a sentence on compassionate release grounds" because

the decision "rests in the discretion of the court."  *United States v. Gotti*, 433 F. Supp. 3d 613, 619

(S.D.N.Y. 2020).

## IV.  Administrative Exhaustion

      A defendant may not bring a motion for compassionate release under section 3581(c)(1)(A)

until "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau

of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of

such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C.

§ 3582(c)(1)(A).  This "exhaustion requirement is not a jurisdictional limitation on a court's power

to consider an inmate's motion for compassionate release," but rather "a claim-processing rule that

may be waived or forfeited by the government."  *United States v. Saladino*, 7 F.4th 120, 121 (2d

Cir. 2021).   The Government has made clear that it does not intend to waive section

3582(c)(1)(A)'s exhaustion requirement.  *See* Opposition at 4 (arguing that the Motion should be denied because Capers has failed to exhaust his administrative remedies).

Capers claims that he "submitted a written request to the Warden of [the Metropolitan Detention Center ("MDC") in] Brooklyn seeking a modification of his term of imprisonment" on April 11, 2023, which would mean that more than thirty days have passed since the Warden's receipt of his request.  Motion at 2; *see* Reply at 2 ("Defendant has exhausted his administrative remedies with his request dated April 11, 2023, to the Warden, for which he has received no response.").  At the time, Capers may have been incarcerated at the MDC in Brooklyn to allow for his personal appearance the January 12, 2023 resentencing.  However, Capers notes that "the Warden lacks the authority to motion the Court for a modification" as "MDC Brooklyn is not [Capers's] parent facility," Motion at 2, presumably referring to the fact that he is no longer detained at the MDC.[4]  While the Government contends that "[t]here is no indication that [Capers] has raised his request for resentencing with the BOP," Opposition at 4, Capers insists that he has in fact submitted a request for compassionate release to his former Warden and that request received no response, Motion at 2; Reply at 2.  As exhaustion here is not a jurisdictional requirement, this Court declines to resolve this exhaustion dispute, and instead considers the Motion on its merits examining whether Capers has provided any extraordinary and compelling reason for his release and evaluating the section 3553(a) factors.

---

[4] According to the Bureau of Prisons website, Capers is presently incarcerated at United States Penitentiary McCreary in Pine Knot, Kentucky.  *See* Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc (search for James Capers, Reg. No. 66680-054) (last visited Nov. 13, 2023).

## V.  The Merits of Capers's Motion

### A.        Extraordinary and Compelling Reasons

Capers argues a single ground for early release: "Mr. McQueen's wrongful conduct (participating in and causing the death of Mr. Beard) . . . significantly contributed to the commission of the offense resulting in the death of Mr. McQueen."  Motion at 3; *accord* Reply at 2 (arguing that the Court did not consider a downward departure "based on the victim's wrongful conduct").  The Court finds that this basis does not constitute an "extraordinary and compelling reason" to warrant his early release.  Although the Court is not limited to the four categories of reasons listed in Guidelines section 1B1.13(b)(1), *see Brooker*, 976 F.3d at 237, those considerations may be "useful for discerning what constitutes an extraordinary and compelling reason warranting compassionate release."  *United States v. Francisco-Ovalle*, No. 18 Cr. 526 (AJN), 2021 WL 123366, at *2 (S.D.N.Y. Jan. 13, 2021); *see also United States v. Hernandez*, No. 00 Cr. 1078 (NGG), 2021 WL 3424729, at *1 (E.D.N.Y. Aug. 5, 2021) (finding that, although not binding, the Sentencing Commission's "policy statement does provide relevant guidance").  The four categories of reasons identified in section 1B1.13(b)(1) are "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons."  U.S.S.G. § 1B1.13(b)(1).  Capers does not put forward any reason that could possibly fall into any of the first three categories.  The fourth, "Other Reasons," includes reasons "other than, or in combination with, the [other] reasons."  *Id.*

In essence, Capers asks the Court to reconsider its sentencing decision, based on his view that "[t]he Court did not have the benefit of considering . . . the U.S. Sentencing Guideline provision that encourages downward departures based on the victim's wrongful conduct."  Reply at 2.  But a compassionate release motion is "not an opportunity to second guess or to reconsider

the sentencing court's original decision." *United States v. Roney*, 833 F. App'x 850, 854 (2d Cir. 2020) (internal quotations marks omitted).  "What justifies compassionate release is a finding that *new mitigating* 'extraordinary and compelling' circumstances exist to reduce that sentence." *United States v. Ebbers*, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020) (emphasis added).

Capers has supplied no such new circumstances.  Further, the Court did explicitly consider at his resentencing whether there was a basis to depart from the advisory Guidelines range, finding no "grounds warranting an upward or downward departure in this case."  Resentencing Tr. at 31:18-23.  This determination was made with full knowledge of Capers's argument that the "victim's death here was a revenge killing."  Reply at 4.  Indeed, the Court acknowledged Capers's argument that "Mr. McQueen's murder was not part of the racketeering activity" but rather "a desire for revenge for Mr. Beard's death," Resentencing Tr. at 22:16-21, but found that "the evidence did establish by a preponderance of the evidence that Mr. McQueen was murdered as part of the racketeering conspiracy," which "Capers agreed to join," *id.* at 22:4-8; *see also id.* at 24:22-25:4 (noting that "the jury specifically found that [Capers] participated in a racketeering activity," which included "the murder of Allen McQueen").[5]  No facts have changed after the Court's conclusion not to depart from the advisory Guidelines range.  In short, Capers presents no "extraordinary or compelling reason" for a sentence reduction, but only rehashes arguments that were presented to, and considered by, the Court at the January 12, 2023 resentencing.

---

[5] On appeal from his original sentencing, the Second Circuit upheld the sufficiency of the evidence to support the jury's verdict, holding "a rational trier of fact could have concluded that the murder of McQueen was part of the RICO enterprise" and that a reasonable juror could find that the evidence "linked the murder of McQueen to the success of the Leland Crew." *Capers*, 20 F.4th at 114; *see also id.* at 114-15 ("From all of that evidence, a trier of fact could reasonably draw the inference that Capers's murder of McQueen was an instance of a Leland member striking back at 'the enemy' to bolster the racketeering enterprise.").

**B.      Section 3553(a) Considerations**

Even had Capers established "extraordinary and compelling reasons" that merit an early release, the analysis would not end there.  The Court would also need to consider whether a sentence reduction is warranted "after considering the factors set forth in section 3553(a) to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A); *see also Bennett*, 2022 WL 3445349, at *2.  Here, the "nature and circumstances" of Capers's offense, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A), and "to afford adequate deterrence," *id.* § 3553(a)(2)(B), strongly counsel against reducing the sentence imposed.

As this Court determined at Capers's resentencing, "Capers 'is a very dangerous person who needs to be in prison for a very long time, and is 'a threat to all law-abiding citizens.'" Resentencing Tr. at 60:5 (quoting Original Sentencing Tr. at 26:9).  As the Court explained, "the nature and circumstances of the offense" and the need "to provide just punishment for the offense" both "weigh overwhelmingly in favor of an extremely lengthy term of imprisonment.  *Id.* at 54:5-10.  The seriousness of Capers's offense conduct of course is most powerfully shown by the fact that he shot and killed another human being.  McQueen, holding his one-year-old daughter, was gunned down while walking down a New York City street in the middle of the day.  As the Court explained at Capers's resentencing:

> This was a brutal and calculated murder.  I have watched the video of the shooting and it is terrifying.  The shooting was in broad daylight on a residential street.  It was near a park and a school.  You can see people running in all directions as Mr. Capers opened fire.  It was exceedingly dangerous, even somehow more dangerous that many public shootings.  A bullet easily could have hit Mr. McQueen's young daughter or she could have been seriously physically injured when her father collapsed to the pavement.  Innocent people on the street could have been hit by a stray bullet.  A child at the school or playing in the park could have been struck.

11

> And this is nothing to say about the psychological trauma to Mr. McQueen's daughter.  Even if she does not recall the incident, she apparently has already learned at a young age that her father was brutally murdered as he held her in his arms.  Mr. McQueen's mother, Ms. Hines, spoke powerfully today about the impact of her son's murder on her family and her family's life.  It is clear and hardly surprising that the pain caused by her son's murder will never go away.

*Id.* at 57:2-20.

There also is a strong need for deterrence and for the sentence to promote respect for the law by Capers.  At resentencing, this Court also shared Judge Pauley's prior observation that "Capers poses a tremendous danger to society," shown by his "long history of harmful criminal conduct."  *Id.* 58:3-5; *see* Original Sentencing Tr. at 26:8-13, 26:20-24; *see also id.* at 5:2-5.  This was Capers's sixth criminal conviction.  PSR ¶¶ 76-93.  Prior sentences clearly did not deter Capers's continued criminal conduct.  Resentencing Tr. at 59:20-21.  Nor has Capers shown remorse while incarcerated, instead clinging to his narrative justifying McQueen's murder, *id.* at 38:9-12, boasting of beating the system by avoiding mandatory life imprisonment, *id.* at 61:14-23, and appearing eager to resume gang activity upon his release, *id.* at 61:24-62:1.  The Court also specifically considered mitigating circumstances when imposing its sentence, including that Capers "grew up in a violent household, surrounded by abuse and instability," *id.* at 60:25-61:1, that he attained a GED and has been reading and writing in prison, *id.* at 61:10-11, and that, as Judge Pauley previously noted at the original sentencing, "a sentence of life imprisonment for [a then 22-year-old] would . . . only throw another entire life entirely away," *id.* at 62:13-16; *see* Original Sentencing Tr. at 27:6-11.  In fact, after considering the section 3553(a) factors, the Court varied downwardly from the Guidelines range of life imprisonment.  Resentencing Tr. at 52:15-17.

In sum, granting early release in this case would fail to reflect the seriousness of Capers's offenses, would not justly punish those offenses, would fail to promote respect for the law, and

would not achieve adequate deterrence.  Thus, the applicable section 3553(a) factors compel the conclusion that no reduction of the imposed sentence is warranted.

## VI.  Conclusion

For the above reasons, Capers's Motion for compassionate release is dismissed for lack of jurisdiction.  The Court further concludes that it would deny the Motion on its merits were jurisdiction to be restored following conclusion of Capers's pending appeal.  The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 359 and 366.

SO ORDERED

Dated: November 14, 2023
     New York, New York

                             JOHN P. CRONAN
                     United States District Judge